IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.
**09-CV-22702-Jordan-McAliley**

C.R. ENGLAND, INC.

Plaintiff,

v.

DEL MONTE FRESH PRODUCE, N.A., INC.

Defendant.
_______________________________/

FILED by VT D.C.
ELECTRONIC

Sept. 11, 2009

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, C.R. ENGLAND, INC., and sues the Defendant, DEL MONTE FRESH PRODUCE, N.A., INC., a Florida corporation with its principal place of business in Coral Gables, Florida., and states the following:

## PARTIES

1. Plaintiff, C.R. England, Inc. is a Utah Corporation with its principal place of business in Salt Lake City, Utah.

2. Defendant, Del Monte Fresh Produce, N.A. Inc., is a Florida Corporation with its principal place of business in Coral Gables, Florida.

## JURISDICTION AND VENUE

3. Plaintiff bases the jurisdiction of this Court pursuant to 28 U.S.C. 1332, in that the matter in controversy exceeds $75,000.00, exclusive of costs and interest, and is between a citizen of this state and citizens or subjects of a foreign state.

4. Venue is proper in Miami-Dade County, Florida, as this is Defendant's registered

business location now and when the underlying cause of action accrued.

## GENERAL ALLEGATIONS

5. At all times relevant in this Complaint, Plaintiff, C.R. England, Inc., was a motor carrier corporation involved in the interstate transport of goods, and as such transported fresh produce and other commodities for Defendant to various locations throughout the United States when contracted at Defendant's request.

6. At all times relevant to this Complaint, Defendant, Del Monte Fresh Produce N.A., Inc., was an international grower, broker, and shipper of fresh produce and other commodities, and contracted with Plaintiff for the transport of same to various locations in the United States.

7. On September 21, 2004, Plaintiff and Defendant entered into a contract entitled "Del Monte Motor Carrier Transportation Agreement" governing the transport of Defendant's fresh produce and other commodities. *See Exhibit "A"*.

8. Between September 29, 2007 and October 19, 2007, Plaintiff transported shipments of fresh produce and other commodities for Defendant, and properly invoiced Defendant in varying amounts for freight charges and associated costs for each shipment, based on the provisions of the aforementioned agreement. Freight charges and costs invoiced to Defendant as a result of these shipments total $156,701.52. *See Exhibit "B"*.

9. Despite numerous requests to do so, Defendant has refused to pay Plaintiff for said freight charges and associated costs.

## Count I - Breach of Contract

Plaintiff realleges and reincorporates paragraphs 1 through 9 herein, and further alleges:

10. Beginning in October 2007, and thereafter, Defendant Del Monte Fresh Produce N.A., Inc., in violation of contract provision I.A. of the Del Monte Motor Carrier Transportation

Agreement, failed to pay Plaintiff all charges accruing from the transportation of commodities performed by Plaintiff between September 29, 2007 and October 19, 2007.

11. As a result of this material breach of contract, Plaintiff has suffered damages in the amount of $156,701.52 in unpaid freight invoices.

**Count II - Unjust Enrichment**

Plaintiff realleges and reincorporates paragraphs 1 through 9 herein, and further alleges:

12. Between September 29, 2007 and October 19, 2007, Plaintiff conferred a benefit upon the Defendant in the form of transportation of Defendant's commodities to various locations within the United States, and Defendant has knowledge of this benefit.

13. Defendant voluntarily accepted and retained the benefit of Plaintiff's transportation of Defendant's commodities to various locations within the United States.

14. Defendant has failed to pay to Plaintiff for freight charges totaling $156,701.52 stemming from the benefit conferred in the form of transportation of Defendant's fresh produce and other commodities to various locations within the United States, and these circumstances render the Defendant's retention of the benefit inequitable unless Defendant pays to the Plaintiff the value for the benefit

**WHEREFORE**, the Plaintiff, C.R. ENGLAND, INC., sues the Defendant, DEL MONTE FRESH PRODUCE N.A., INC., and demands judgement in excess of the Court's jurisdictional threshold, for the amount of all unpaid invoices, plus court costs, both pre-judgment and post-judgment interest, all consequential damages flowing from all breaches and failures described herein, attorneys fees and costs, and any other relief the Court deems just and proper, and demands trial by jury in this matter.

Dated this 3 day of September, 2009.

Respectfully submitted,

NICKLAUS & ASSOCIATES, P.A.
*Attorneys for Plaintiff, C.R. England, Inc.*
4651 Ponce De Leon Boulevard
Suite 200
Coral Gables, Florida  33146
Telephone: (305) 460-9888
Facsimile: (305) 460-9889
Email: edwardn@nicklauslaw.com
        dales@nicklauslaw.com

EDWARD R. NICKLAUS
Florida Bar No. 138399
DALE J. SPURR
Florida Bar No. 0057438

# Exhibit "A"

# DEL MONTE MOTOR CARRIER TRANSPORTATION AGREEMENT

THIS AGREEMENT is to be effective as of the 21st day of September. 2004, by and between DEL MONTE FRESH PRODUCE N.A., INC., having an office at 241 Sevilla Avenue, Coral Gables, Florida 33134 ("SHIPPER") and CR England, INC., with its principal office at Salt Lake City, , UT ("CARRIER").

## WITNESSETH

WHEREAS, CARRIER is registered with the Federal Motor Carrier Safety Administration ("FMCSA") under DOT No. 028406, and engages in business, as an interstate motor carrier of general commodities;

WHEREAS, CARRIER has otherwise fully and completely complied with all laws, rules, and regulations of the United States and of those States, localities, and foreign countries in or through which CARRIER operates, including all requirements with respect to highway safety and public liability and property insurance; and

WHEREAS, SHIPPER has need for prompt, efficient, and reliable transportation of its fresh produce and other perishables exempt from regulation under 49 U.S.C. § 13506(a)(6) and other non-perishable goods ("Commodities") with refrigerated transport in a "Cold Chain," as defined herein and on the bill of lading, to, from, and between various points and places throughout the United States; and

WHEREAS CARRIER wishes to provide such transportation:

NOW, THEREFORE, in consideration of the foregoing premises and the mutual promises contained herein, SHIPPER and CARRIER agree as follows ("Agreement"):

## I. SHIPPER COVENANTS AND AGREES AS FOLLOWS:

A. SHIPPER shall pay CARRIER all charges accruing from the transportation of Commodities, as set forth on Schedule A attached hereto and incorporated herein, in conformity with any and all applicable laws, rules and regulations of all appropriate governmental bodies and agencies, including those of the FMCSA.

B. SHIPPER shall provide CARRIER with reasonable notice regarding pickup locations and destinations for the transportation of the Commodities.

## II. CARRIER COVENANTS AND AGREES AS FOLLOWS:

A. CARRIER shall pick up, at SHIPPER's designated pick-up location and times, all Commodities tendered by the SHIPPER for transportation and promptly and safely transport and deliver such Commodities. CARRIER shall guarantee that all tendered Commodities shall be delivered to SHIPPER's designated delivery location at SHIPPER's designated delivery time and to meet such other performance criteria as are set forth in this Agreement (including Schedules) or as SHIPPER may subsequently designate.

B. CARRIER shall transport and handle all shipments in accordance with instructions provided by SHIPPER, including maintaining the Cold Chain. "Cold Chain" shall mean that the Commodities shall be maintained at a refrigerated and constant temperature, humidity, and such other conditions as SHIPPER may dictate to ensure that the Commodities do not spoil, decay or otherwise suffer any damage due to atmospheric or other conditions at all times from the point where CARRIER first takes possession or control over the Commodities at origin until they have been delivered and accepted by consignee or SHIPPER at final destination.

C. CARRIER agrees to obtain and implement Technology and Operating Requirements at the request of SHIPPER in order to fulfill compliance requirements set forth by SHIPPER's future business objectives as outlined in Schedule B.

D. CARRIER agrees to comply with Del Monte Freight Invoice Requirements as outlined in Schedule C.

E. CARRIER agrees to fully comply with SHIPPER's Policy on Accessorial Charges as outlined in Schedule D.

F. CARRIER represents and warrants that it is duly qualified and authorized to lawfully transport, as a motor carrier, the Commodities in interstate, intrastate, and/or foreign commerce and to lawfully provide to SHIPPER the Services provided for in, and in accordance with the terms of, this Agreement. CARRIER further represents and warrants that it will maintain all authorities, licenses, and permits (the "Permits") required by CARRIER to legally provide the Services in full force and effect as of the date of this Agreement. Specific requirements per port will be listed in Schedule I. CARRIER shall notify SHIPPER immediately in the event of any suspension, cancellation, termination, withdrawal, modification, or transfer of the Permits or any portion thereof. If any such suspension, cancellation, termination, withdrawal, modification, or transfer shall, in SHIPPER's sole discretion, impair the ability of CARRIER to lawfully provide the Services, SHIPPER shall have the right to terminate this Agreement with thirty (30) days written notice.

G. Each shipment shall be evidenced by a bill of lading in the form specified or approved by SHIPPER and CARRIER. Each bill of lading shall be signed by CARRIER or CARRIER's agent or employee showing the kind and quantity of Commodities received by CARRIER at origin. The absence or loss of any bill of lading shall not relieve CARRIER of its obligations and responsibilities with respect to any shipment. The bill of lading shall constitute evidence that CARRIER received the shipment in apparent good order and condition unless otherwise noted by CARRIER on the bill of lading. CARRIER agrees to keep all bills of lading for a period of no less than three (3) years. The terms, conditions and provisions of any bill of lading shall be subject and subordinate to the terms, conditions and provisions of this Agreement and, in the event of a conflict between the bill of lading and this Agreement, the terms, conditions, and provisions of this Agreement shall govern.

H. CARRIER shall maintain a "Satisfactory" safety rating from the FMCSA. A receipt by CARRIER of either a "Conditional" or "Unsatisfactory" rating, or any notice of FMCSA's intent to assign a "Conditional" or "Unsatisfactory" rating, shall be grounds for immediate termination of this Agreement by SHIPPER. CARRIER shall notify SHIPPER immediately upon receipt of any rating, or proposed rating, other than "Satisfactory.

I. CARRIER shall, at its sole cost and expenses, furnish all fuel, oil, tires and other parts, supplies and equipment necessary or required for the safe and efficient operation and maintenance of the tractors, trailers and other motor vehicles and related equipment furnished by CARRIER for the performance of its obligations hereunder (the "Equipment"). CARRIER, at its sole cost and expense,

shall employ in the operation of the Equipment only legally qualified and properly licensed personnel. CARRIER shall have full control of such personnel; shall perform the Services as an independent contractor, and shall assume complete responsibility for all state and federal taxes, assessments, insurance (including, but not limited to workers' compensation, unemployment compensation, disability, pension, and social security insurance) and any other financial obligations arising out of the Services provided under this Agreement.

J. CARRIER shall not withhold any Commodities of SHIPPER on account of any dispute as to the rates, or any alleged failure of SHIPPER to pay charges incurred under this Agreement. CARRIER is relying upon the general credit of SHIPPER, and hereby waives and releases all liens that CARRIER might otherwise have to any Commodities of SHIPPER in the possession or control of CARRIER.

K. CARRIER shall promptly notify SHIPPER of (a) any accident or other occurrence that may impair the safety of the Commodities transported and (b) any material delay in the time of the arrival of the Commodities to SHIPPER's designated receivers, by telephone, email, or otherwise, at CARRIER's expense and with reasonable dispatch.

L. CARRIER shall provide labor and supervision as required, which are to be coordinated with SHIPPER's (or its designee's) personnel. CARRIER shall be and remain liable to SHIPPER pursuant to the terms, conditions, and provisions of this Agreement including, without limitation, liability for loss, damage, or of Commodities in accordance with the provisions of this Agreement, whether such loss, damage, or occurred while such Commodities was in the possession of CARRIER or was in the possession of such subcontractor or other person. Nothing in this provision shall be construed to limit, remove, or compromise any right or remedy that SHIPPER may have, in law or in equity, against any such subcontractor or other person.

M. CARRIER shall obtain and maintain at all times during the term of this Agreement the following insurance coverage, with insurance companies rated "A" or better by A.M. Best. SHIPPER shall be named as an additional insured, and CARRIER shall furnish SHIPPER with appropriate certificate(s) of insurance and copies of endorsements to policies showing such designation, and also provide that the insurance overages shall not be canceled by CARRIER's insurance company(ies) except upon thirty (30) days' written notice to SHIPPER:

1. Comprehensive general liability insurance with an aggregate limit of not less than one million dollars ($1,000,000); and commercial automobile liability insurance in a combined single limit not less than one million dollars ($1.000,000) for injury or death to any person or for damages to property in any one occurrence;

2. Motor truck cargo "all risk" insurance (with Cargo Insurance Endorsement Form BMC 32) covering loss of, or damage to, cargo, with a limit of no more than one hundred thousand dollars ($100,000) per occurrence (no policy shall be accepted under this subsection that includes a deductible of over one thousand dollars ($1,000) for cargo loss and such policy shall not have any exclusions, such as an exclusion for damage caused by mechanical or refrigerator unit breakdown, that limits coverage from that set forth under this Contract;

3. Workers' compensation insurance covering all employees of CARRIER engaged in performing the Services required by this Agreement and as required by state law; and

4. True and correct copies of the appropriate certificates of insurance shall be attached hereto as Schedule G. Upon SHIPPER's request, CARRIER shall immediately provide SHIPPER with copies of applicable insurance policies.

N. CARRIER shall indemnify, defend, and hold SHIPPER, its officers, directors, employees, agents, parent, subsidiaries, and affiliates harmless from and against any cost, claims, demands, losses, fines, penalties, or causes of action, including reasonable attorneys' fees, relating to or arising out of CARRIER's obligations or the Services to be performed under this Agreement, including but not limited to claims for injury or death to persons, or damage to property; workers' compensation, unemployment compensation, or other claims by or on behalf of employees or contractors of CARRIER; and any other claims whatever relating to or arising out of the Services to be performed hereunder, unless such claim is due solely to SHIPPER's gross negligence or willful misconduct.

O. CARRIER agrees to keep confidential any information that may be obtained by CARRIER relating to SHIPPER's operations or business activities, including, but not limited to, the names of SHIPPER's suppliers, vendors and customers. CARRIER shall hold all such confidential information in confidence and shall not use any such information other than for the benefit of SHIPPER or in performance of its obligations under this Agreement. Neither party shall disclose any information regarding this Agreement or any amendments or attachments hereto, except (1) as may be required to a motor carrier in order to perform its duties and obligations pursuant to this Agreement, (2) as may be required by local, state or federal authorities, law or regulation, (3) when such disclosure is between a parent and its subsidiary or corporate affiliate and such party is bound by a confidentiality agreement, or (4) when to an audit by an accounting or law firm, so long as the disclosing party is responsible for ensuring compliance with this confidentiality requirement by the audit or law firm.

## III. CARRIER AND SHIPPER MUTUALLY AGREE AS FOLLOWS:

A. Any termination of this Agreement by notice or otherwise shall not in any way affect the accrued obligation of the parties hereunder or any other obligation or claim incurred or arising prior to the effective date of such a termination but not then settled, paid, or otherwise satisfied in full.

B. That neither party shall be liable to the other for any failure to perform obligations under this Agreement when the same is occasioned by Acts of God, public enemies, authority of law, labor disorders, strikes, riots, closing of highways, acts of terrorism or any actions of local, State, Federal, or foreign authorities or any other cause or condition beyond the reasonable control of such party.

C. That the terms and conditions of this Agreement and the rates and charges herein shall not be changed or modified, except as herein provided in the case of a change or modification of this Agreement save and except by written endorsement thereof attached hereto and signed by duly authorized representative of both CARRIER and SHIPPER; and in the case of a change or modification in the rate and charges set forth herein save and except by prior written approval by a duly authorized representative of SHIPPER.

D. The transportation of Commodities and the Services provided by CARRIER shall be provided as "contract carriage" within the meaning of 49 U.S.C. § 13102(4)(B). SHIPPER and CARRIER each expressly waive all rights and remedies they may have with respect to each other, and CARRIER expressly waives all rights or remedies it may have with respect to SHIPPER under 49 U.S.C. Subtitle VII, Part B (excluding §§ 13703, 13706, 14101 and 14103) to the extent such rights and remedies conflict with the terms of this Agreement and such waiver is permitted by 49 U.S.C. § 14101(b)(1). Except as otherwise stated in this Agreement, neither party waives any rights or remedies it may have as

to any third party. In the event of a claim, CARRIER acknowledges and agrees that SHIPPER's actual loss shall be determined by the Commodities' wholesale invoice price

E. The rates noted herein, or any schedule hereto, shall supersede any and all other rates published or quoted by CARRIER. The parties agree that all compensation under this Agreement shall be based upon mileage calculated by the designated version of PC Miler Version 14 software or such version as SHIPPER may designate, in writing.

F. This Agreement shall remain in effect for one (1) year from the date hereof and, if not canceled, shall automatically renew for additional periods of one (1) year. Either party shall have the right to terminate this Agreement, for any reason, by giving to the other party thirty (30) days prior written notice. In the event CARRIER fails to meet delivery or other performance specifications under this Agreement, SHIPPER shall notify, in writing, CARRIER of such failure. CARRIER shall have thirty (30) days in which to cure such failure. If CARRIER continues to fail to meet delivery or other performance specifications after the thirty (30) day cure period, SHIPPER may terminate the Agreement upon written notice.

G. Any and all notices permitted or required hereunder shall be in writing (unless permitted elsewhere in this Agreement to be oral) and shall be deemed to have been fully given upon personal delivery; or three business days after being deposited in the United States Mail via certified mail, return receipt requested, with postage prepaid and properly addressed to the other party at the address shown below; or when faxed to the other party at the fax number shown below; or the next business day after being deposited with an overnight delivery company with the express charges prepaid and properly addressed to the other party at the address shown below:

| To CARRIER: | To SHIPPER: |
|---|---|
| C.R. England | **Del Monte Fresh Produce N.A., Inc.** |
| 4701 West 2100 South | 241 Sevilla Avenue, 11th Floor |
| Salt Lake City, UT 84120 | Coral Gables, Florida 33134 |
| Attn: Dave Robbins | Attn: David Wills |
| Phone: 800-338-9274 | Phone: 305-520-8285 |
| Fax: 801-977-6682 | Fax: 305-520-8206 / 8208 |
| Email: daver@crengland.com | Email: dwills@freshdelmonte.com |

H. Any headings or numbering of paragraphs or articles of this Agreement are for organizational convenience only and all terms and conditions of this Agreement are intended to take precedence over any such heading or numbering. If any part, term, paragraph or provision of this Agreement is found or declared to be invalid or unenforceable for any reason, the remainder of this Agreement shall remain in full force and effect.

I. The failure of a party to object to or take action with respect to any breach of any term of this Agreement by the other shall not be construed as a waiver of any rights hereunder by the non-objecting party, nor of any claims, past, present or future, for any breach of this Agreement.

J. This Agreement shall be binding upon the heirs, executors, administrators, successors and assigns of each of the parties hereto. However, CARRIER shall not assign its interest in whole or part in this Agreement without the prior, written consent of SHIPPER. This Agreement is the entire agreement between the parties with respect to its subject matter, and is binding on and for the benefit of both parties and their respective successors and permitted assigns. This Agreement supersedes all prior proposals, agreements, oral representations, memoranda, or understandings with respect to this Agreement or its subject matter. Only a writing signed by both parties may amend this Agreement.

K. Dispute Resolution.

1. Executive Review. To the extent the parties are unable to resolve any dispute under this Agreement, including but not limited to claims for cargo loss and damage, charges, or payments due, either party may request, in writing, an Executive Review of the dispute. The written request shall include sufficient description of the dispute to clearly identify it to the other party and should include relevant supporting documents. Each party shall designate an Executive, of at least a vice president level, who does not routinely have direct responsibility for the dispute. The designated Executives shall review and discuss resolution of the dispute with each other within fifteen (15) days of the written request. If the designated Executives are unable to resolve the dispute within the fifteen day period, either party may request arbitration of the dispute as described in Section 2 below.

2. Arbitration.

a. Arbitration Required. Any dispute arising in connection with or relating to this Agreement, its terms, or its implementation, including any allegation of a tort, or of breach of this Agreement, or of violations of the requirements of any applicable government authorities, whether local, state, federal, or foreign shall be submitted to final and binding arbitration in accordance with (1) the Commercial Arbitration Rules (and related arbitration rules governing requests for preliminary relief) of the American Arbitration Association or of such other arbitration organization as the parties agree on in writing ("AAA"); (2) the Federal Arbitration Act (ch. 1 of tit. 9 of United States Code) or, if the Federal Arbitration Act is held not to apply, the arbitration laws of the State of Florida (and not the Federal Arbitration Act); and (3) the procedures set forth below. The parties intend that the arbitrator decide all issues, including those relating to the scope of this Section III.K., to the maximum extent permitted by law.

b. Demand for Arbitration. A demand for arbitration shall be filed with the AAA's office located in or closest to Coral Gables, Florida, and the arbitration shall be held in Coral Gables, Florida, or as otherwise agreed to in writing by the parties. The demand shall be filed within the time allowed by the applicable statute of limitations. Failure to file the demand within such statute-of-limitations period shall be deemed a full waiver of the claim.

c. Parties to Be Bound by Arbitration Award. The parties agree to be fully and finally bound by the arbitration award, and, where allowed by law, a judgment may be entered on the award in any court having jurisdiction thereof.

d. Allocation of Arbitration Fees and Other Expenses. Each party shall pay its own AAA arbitration filing fees, and an equal share of the fees and expenses of the arbitrator. The arbitrator shall award reasonable attorneys fees to the prevailing party.

L. Except as delineated in Section III.K. above, this Agreement shall be governed by and construed in accordance with the laws of the State of Florida, including its conflict-of-law principles.

**ENTERED INTO** by the undersigned parties as of the latest date set forth below:

| **CARRIER:** England Logistics | **SHIPPER:** Del Monte Fresh Produce N.A., Inc. |
| --- | --- |
| By: [signature]<br>Signature | By: [signature]<br>David Wagner<br>Vice President of Traffic |
| Dave Robbins<br>Printed Name | 09-22-04<br>Date |
| President England Logistics<br>Title | |
| 9/22/04<br>Date | |

# ADDENDUM 1 TO DEL MONTE MOTOR CARRIER TRANSPORTATION AGREEMENT DATED September 22, 2004

The following items are adjusted from the original Del Monte Motor Carrier Transportation Agreement and apply only to the dedicated services offered by England Logistics, Inc.

The following items will read as follows and apply to the dedicated services:

II. CARRIER COVENANTS AND AGREES AS FOLLOWS:

C. Does not apply to the dedicated services.
D. Does not apply to the dedicated services.
E. Does not apply to the dedicated services.
M. Item 2 - Would be replaced with the following language: England shall be liable for any loss, damage, or injury to the products occurring while the products are in the possession or under the control of England, whether such loss, damage, or injury results from England's negligence or willful misconduct. However, England shall not be liable for any loss, damage, or injury to the products arising out of the acts or omissions of Customer or due to Force Majeure. The liability of England shall be Customer's cost of goods including the cost of inspecting, reworking or disposing, but shall not exceed the amount of $100,000 per trailer load. With Cargo Insurance Endorsement Form BMC 32. Customer will make reasonable efforts to mitigate any loss. It is England's responsibility to ensure that the trailer temperature is proper when it leaves Customer's facility until it arrives at Customer's customer.
N. Additional Language - SHIPPER shall indemnify, defend, and hold CARRIER, its officers, directors, employees, agents, parent, subsidiaries, and affiliates harmless from and against any cost, claims, demands, losses, fines, penalties, or causes of action, including reasonable attorneys' fees, relating to or arising out of a material breach of SHIPPER's obligations or the Services to be performed under this Agreement, including but not limited to claims for injury or death to persons, or damage to property; workers' compensation, unemployment compensation, or other claims by or on behalf of employees or contractors of SHIPPER; and any other claims whatever relating to or arising out of the Services to be performed hereunder, unless such claim is due solely to CARRIER's gross negligence or willful misconduct.

III. CARRIER AND SHIPPER MUTUALLY AGREE AS FOLLOWS:

D. Last Sentence will read as follows - . In the event of a claim, CARRIER acknowledges and agrees that SHIPPER's actual loss shall be determined by the wholesale invoice price of goods.

E. The rates noted herein, or any schedule hereto, shall supersede any and all other rates published or quoted by CARRIER. The parties agree that all compensation under this Agreement shall be based upon mileage calculated by the designated version of PC Miler Version 14software or such version as SHIPPER may designate, in writing.

F. The term of this Agreement shall be for three (3) years commencing on the 22nd day of September 2004, unless otherwise terminated pursuant to the terms hereof. Either party may terminate this Agreement after the first anniversary date upon 60 days written notice to the other party.

**SCHEDULE F** – Does not apply to dedicated services.

Additional Language - If at any time there should occur material change in any Operating Assumptions set out in Schedule "B", either party may request that the affected rates and charges on Schedule "A" be adjusted in a manner appropriate to the change. The parties shall negotiate this adjustment in good faith and the adjustment shall be effective by mutual agreement.

"Shipper":
DEL MONTE FRESH PRODUCE N.A., INC.
A FLORIDA CORPORATION

By: [signature] David Degnan
Title: VP of Traffic
Date: 9/22/04

"Carrier":
ENGLAND LOGISTICS INC.
A SLC CORPORATION

By: [signature]
Title: President England Logistics
Date: 9/22/04

SCHEDULE A
LIST OF CHARGES

**Prices:**

| | |
|---|---|
| Weekly fixed cost: | $17,126 |
| Variable mileage cost: | $0.390 |
| Driver charge per mile - FL: | $0.425 |
| Driver charger per hour - CA: | $26.65 |

**Resources**

| | |
|---|---|
| Single drivers | 12 |
| Tractors | 12 |
| Trailers - FL | 12 |
| Trailers – CA | 9 |

**Pricing notes**

1. Tolls, Lumper, Spotting Charges and 3rd Structure Tax – will be passed through at cost.
2. (a) Fuel Peg- California - $.332 of the variable mileage charge covers the estimated fuel cost per mile. The actual cost of fuel will be compared to this estimate monthly. If the actual cost exceeds the estimate, Del Monte will be billed the difference. If the actual cost is less than this estimate, Del Monte will be credited the difference.
   a. Note: the fuel peg for California was calculated using a fuel cost per gallon of $1.55.

   ~~(b) Fuel Peg- Florida - $.246 of the variable mileage charge covers the estimated~~ fuel cost per mile. The actual cost of fuel will be compared to this estimate monthly. If the actual cost exceeds the estimate, Del Monte will be billed the difference. If the actual cost is less than this estimate, Del Monte will be credited the difference.
   a. Note: the fuel peg for Florida was calculated using a fuel cost per gallon of $1.30.
3. Pallet exchange - will be provided, however the cost of pallets is not included.
4. Start Up Costs – will be passed through at cost.
5. Additional Trailers – any trailers above the 21 trailers stated above will be billed at $210.41 per trailer per week.

**This SCHEDULE A, which completely replaces and supersedes any earlier schedule, appendix, addendum, or other provision of this Agreement relating to the same subjects, is agreed to by the undersigned parties as of the latest date set forth below.**

| CARRIER: England Logistics | SHIPPER: Del Monte Fresh Produce N.A., Inc. |
|---|---|
| By: [signature] | By: [signature] |
| Signature | David Wagner |
| Dave Robbins | Vice President of Traffic |
| Printed Name | 09-22-04 |
| President England Logistics | Date |
| Title | |
| 9/22/04 | |
| Date | |

SCHEDULE B

TECHNOLOGY AND OPERATING REQUIREMENTS

I. CARRIER acknowledges and agrees that it has the necessary licenses, technology systems and software capability to meet SHIPPER's needs and specifications, including communication, reporting and invoicing requirements set forth in the Schedules to Agreement. Such specifications include, but are not limited to:

A. Internet access to facilitate data communication:
   1. Loads to be tendered and accepted on-line in I2 Transportation Management System ("TMS")
   2. FTP file transfers
   3. Truck satellite location updates

B. Email capability

C. PC Miler, version 14.1, practical miles,

D. MS Office

E. Performance reports (TBD by SHIPPER and CARRIER)

II. OPERATING REQUIREMENTS

A. FMCSA Motor Carrier Registration and, If Necessary, State Operating Authority(ies)

B. Evidence of FMCSA Safety Rating of "Satisfactory"

C. Dun & Bradstreet number

D. Tax Identification Number

E. Certificate of Insurance

**This SCHEDULE B, which completely replaces and supersedes any earlier schedule, appendix, addendum, or other provision of this Agreement relating to the same subjects, is agreed to by the undersigned parties as of the latest date set forth below.**

| **CARRIER:** England Logistics | **SHIPPER: Del Monte Fresh Produce N.A., Inc.** |
|---|---|
| By: [signature]<br>Signature | By: [signature]<br>David Wagner<br>Vice President of Traffic |
| Dave Robbins<br>Printed Name | 09-22-04<br>Date |
| President England Logistics<br>Title | |
| 9/22/04<br>Date | |

SCHEDULE C

FREIGHT INVOICE REQUIREMENTS

Invoices not adhering to the following requirements will be subject to delay in payment and possible rejection by SHIPPER:

1. Submit original invoices. Copies with handwritten changes will not be accepted.

2. Note all relevant DMFP reference numbers, such as Sales Orders or Return Authorization numbers on the invoice.

3. Attach a signed Proof of Delivery.

4. Obtain pre-approval by DMFP Traffic Operations of all unloading, stop-off, layover, detention and/or any other accessorial charges. The charges must be submitted on the original invoice and accompanied by a receipt (for unloading). These fees will not be approved for payment if billed under separate cover. Charges must be listed on stamped BOL or a customer generated receipt.

5. Itemize charges on invoices.

6. Future requirements may include electronic invoicing.

7. Address all invoices to:

Freight Payables Clerk
Del Monte Fresh Produce Company N.A., Inc.
P.O. Box 149222
Coral Gables, FL 33114-9222

**This SCHEDULE C, which completely replaces and supersedes any earlier schedule, appendix, addendum, or other provision of this Agreement relating to the same subjects, is agreed to by the undersigned parties as of the latest date set forth below.**

| CARRIER: England Logistics | SHIPPER: Del Monte Fresh Produce N.A., Inc. |
|---|---|
| By: [signature] | By: [signature] |
| Signature | David Wagner |
| Dave Robbins | Vice President of Traffic |
| Printed Name | 05-22-04 |
| President England Logistics | Date |
| Title | |
| 9/22/04 | |
| Date | |

SCHEDULE D

ACCESSORIAL CHARGES AND PERFORMANCE SPECIFICATIONS

I. ACCESSORIAL CHARGES

A. Stop off fee (paid by SHIPPER to CARRIER):
$50 = 1st, $75 = 2nd, $100 = 3+

B. Ordered/Not Used (paid by SHIPPER to CARRIER):
1. $200 per occurrence, an appointment must have been made by the time of the cancellation.

C. Detention and layover (paid by SHIPPER to CARRIER):
1. Must be requested by CARRIER at time of occurrence
2. Detention charges apply at location if CARRIER has an appointment and arrives at or prior to the appointment and checks in. Detention only begins after the first 2 hours of waiting time (from the appointment time) .a Detention charges shall be $80.00 per hour. The maximum detention including layover to be paid per day is $480.00
3. All layovers and detentions must be documented and approved by Del Monte Fresh Produce prior to loading or unloading as applicable.

D. Fuel Surcharge:
1. SHIPPER will pay a fuel surcharge only where such charges are specifically detailed in attachments to this Agreement, or its Schedules.

E. Redirect Charges (paid by SHIPPER to CARRIER):
1. Where consignee rejects or refuses a shipment to the transportation related damage or condition, CARRIER shall be responsible for the cost of transporting the shipment to final destination and any cost related to such redirection. Where consignee rejects or refuses shipment due to quality of the Produce unrelated to transportation issues, CARRIER and SHIPPER will negotiate, in good faith, on charges on a case-by-case basis.

F. Other Charges:
1. CARRRIER and SHIPPER will negotiate, in good faith, other incidental charges on an individual event basis.

II. PERFORMANCE REQUIREMENTS

A. On Time Service
1. CARRIER shall not meet the following service requirements for one time shipments:
- 98% or above on time to all port appointments.
- 98% or above on time to all customers.

- Appointments at ports must remain over 98%.
- All metrics will be based on a 60 day rolling average.
- Additional metrics will be mutually agreed upon by SHIPPER and CARRIER.

**This SCHEDULE D, which completely replaces and supersedes any earlier schedule, appendix, addendum, or other provision of this Agreement relating to the same subjects, is agreed to by the undersigned parties as of the latest date set forth below.**

| CARRIER: C.R. England Inc | SHIPPER: Del Monte Fresh Produce N.A., Inc. |
|---|---|
| By: [signature] Signature | By: [signature] David Wagner Vice President of Traffic |
| Mark Anthor Printed Name | 1-18-05 Date |
| Director of Traffic Title | |
| 12-13-04 Date | |

# SCHEDULE E

## EQUIPMENT SPECIFICATIONS & REQUIREMENTS

I. EQUIPMENT SPECIFICATIONS: CARRIER shall meet SHIPPER'S minimum equipment specifications as follows:

A. Air ride Trailers sufficient to accommodate volume in each lane awarded.
B. 3 load locks per trailer as a minimum requirement to prevent cargo damage claims
C. Additional block and brace materials as required to prevent cargo damage claims
D. Well-maintained and clean equipment consistent with SHIPPER quality requirements.
E. 48-foot or 53-foot air ride trailers (48-foot are preferable).
F. Well maintained air chutes in trailers to distribute airflow evenly in cargo area.
G. Driver is responsible for placing temperature recorder on trailer (when provided by SHIPPER).

II. COLD WEATHER REQUIREMENTS

CARRIER agrees to implement cold weather procedures per SHIPPER'S specifications, which include but are not limited to the following:

A. Drain plugs for drain holes in trailer floor to prevent cold air damage to bottom layers.
B. Ensure door seals are in good repair and serviceable to seal door opening.
C. Pre-warm trailer as per SHIPPER specifications.
D. Utilize SHIPPER-provided spacers on banana loads.

III. COMPLIANCE

Where CARRIER fails to meet an agreement specification requirements, SHIPPER may refuse to load the shipment, without charge or penalty. CARRIER shall be responsible to SHIPPER for any and all damages to Product and penalties or costs ~~assessed against SHIPPER by its customers due to~~ CARRIER'S failure to meet such specifications.

**This SCHEDULE E, which completely replaces and supersedes any earlier schedule, appendix, addendum, or other provision of this Agreement relating to the same subjects, is agreed to by the undersigned parties as of the latest date set forth below.**

| CARRIER: England Logistics | SHIPPER: Del Monte Fresh Produce N.A., Inc. |
|---|---|
| By: [signature]<br>Signature | By: [signature]<br>David Wagner<br>Vice President of Traffic |
| Dave Robbins<br>Printed Name | 09-22-04<br>Date |
| President England Logistics<br>Title | |
| 9/22/04<br>Date | |

SCHEDULE F

DEL MONTE CLAIMS PROCEDURES

1. In the event of a cargo loss or damage, SHIPPER will email an "Initial" Claim Notification Form (where the dollar amount is yet to be determined) to CARRIER. CARRIER shall be required to acknowledge in writing its receipt of the Form within two (2) business days. Del Monte will assume the CARRIER takes responsibility for the claim if there is no response.
2. SHIPPER shall thereafter submit a Notification of Cargo Loss and/or Damage Claim (the "Claim") to the CARRIER via fax and Certified U.S. Mail, with a courtesy copy to CARRIER's insurance provider.
3. Where available to SHIPPER, it will submit the following records with the Claim: Load Tender Receipt, Invoice, Del Monte Fresh Commodities N.A. Bill of Lading and/or Proof of Delivery, Loading Document if possible, evidence of loss (*i.e.*, inspection report and/or rejection report) if applicable, Account of Sale if applicable, and other supporting documentation.
4. In the event that CARRIER accepts the Claim, CARRIER shall remit full payment within thirty (30) calendar days of the date of receipt of Claim.
5. In the event that CARRIER declines the Claim, CARRIER shall provide written documentation and a good faith basis for such declination with thirty (30) days of claim submission. If the parties are unable to resolve any dispute upon a claim, the Dispute Resolution provisions set forth in Section III.K. of the Agreement shall apply.

**This SCHEDULE F, which completely replaces and supersedes any earlier schedule, appendix, addendum, or other provision of this Agreement relating to the same subjects, is agreed to by the undersigned parties as of the latest date set forth below.**

| **CARRIER:** England Logistics | **SHIPPER: Del Monte Fresh Produce N.A., Inc.** |
|---|---|
| By: [signature] | By: [signature] |
| Signature | David Wagner |
| Dave Robbins | Vice President of Traffic |
| Printed Name | 09-22-04 |
| President England Logistics | Date |
| Title | |
| 9/22/04 | |
| Date | |

# Exhibit "B"

$96,074.65
$23,062.35
$37,564.52
$156,701.52

STEVES1 AR300 C. R. ENGLAND, INC. OPEN INVOICES 2/18/09
STEVES **CUSTOMER ACCOUNT INQUIRY** 14:32:14

Customer **DLMFL DEL MONTE FRESH PRODUCE** **6** SI **0** DP **0** PM **1** IM
Address **PO BOX 149222, ATTN: DENISE MARSHALL, CORAL GABLES, FL 33114-9222**
Contact **DENISE MARSHALL** Telephone **305 520-8372**
Last Payment: Date - **2/11/08** Check No. - **ACH7** Amount - **46,500.10**

| Current | 31-60 Days | 61-90 Days | Over 90 Days | Total Balance |
|---|---|---|---|---|
| **.00** | **.00** | **.00** | **37,564.52** | **37,564.52** |

Position to: Invoice No. ________ Order No. ________ Inv Date 0/00/00

| Inv Date | Mailed | Inv No. | Ord No. | Reference | Type | Amount | Balance |
|---|---|---|---|---|---|---|---|
| 10/10/07 | 10/11/07 | 4506655 | 4607627 | HK6418 | Inv | 1,783.56 | 1,783.56 |
| 10/10/07 | 10/11/07 | 4506656 | 4616360 | HM0946 | Inv | 1,194.00 | 1,194.00 |
| 10/11/07 | 10/12/07 | 4508892 | 4616839 | HM3510 | Inv | 782.34 | 782.34 |
| 10/11/07 | 10/12/07 | 4508893 | 4613566 | HM0278 | Inv | 2,569.62 | 2,569.62 |
| 10/12/07 | 10/15/07 | 4510223 | 4616357 | HM1071 | Inv | 2,569.62 | 2,569.62 |
| 10/12/07 | 10/15/07 | 4510224 | 4616359 | HK8459 | Inv | 1,198.50 | 1,198.50 |
| 10/15/07 | 10/16/07 | 4511817 | 4616361 | HK8318 | Inv | 1,194.00 | 1,194.00 |
| 10/15/07 | 10/16/07 | 4511818 | 4616841 | HM3520 | Inv | 782.34 | 782.34 |
| 10/15/07 | 10/16/07 | 4511819 | 4616844 | HM3065 | Inv | 782.34 | 782.34 |
| 10/16/07 | 10/17/07 | 4513329 | 4616362 | HM0949 | Inv | 1,194.00 | 1,194.00 |
| 10/16/07 | 10/17/07 | 4513330 | 4616364 | HM0957 | Inv | 1,194.00 | 1,194.00 |

**More...**

**F3=Exit F4=Comments F9=Print Listing F10=Payments F11=View F12=Cancel F20=Dial**

STEVES1 AR300 C. R. ENGLAND, INC. OPEN INVOICES 2/18/09
STEVES **CUSTOMER ACCOUNT INQUIRY** 14:32:16

Customer **DLMFL DEL MONTE FRESH PRODUCE** **6** SI **0** DP **0** PM **1** IM
Address **PO BOX 149222, ATTN: DENISE MARSHALL, CORAL GABLES, FL 33114-9222**
Contact **DENISE MARSHALL** Telephone **305 520-8372**
Last Payment: Date - **2/11/08** Check No. - **ACH7** Amount - **46,500.10**

| Current | 31-60 Days | 61-90 Days | Over 90 Days | Total Balance |
|---|---|---|---|---|
| **.00** | **.00** | **.00** | **37,564.52** | **37,564.52** |

Position to: Invoice No. ________ Order No. ________ Inv Date 0/00/00

| Inv Date | Mailed | Inv No. | Ord No. | Reference | Type | Amount | Balance |
|---|---|---|---|---|---|---|---|
| 10/16/07 | 10/17/07 | 4513331 | 4616846 | HM3515 | Inv | 782.34 | 782.34 |
| 10/17/07 | 10/18/07 | 4515106 | 4616363 | HM0954 | Inv | 1,194.00 | 1,194.00 |
| 10/17/07 | 10/18/07 | 4515107 | 4613560 | HK8491 | Inv | 1,783.56 | 1,783.56 |
| 10/18/07 | 10/19/07 | 4516945 | 4603519 | HK2753 | Inv | 958.48 | 958.48 |
| 10/19/07 | 10/22/07 | 4518406 | 4628534 | HM9780 | Inv | 1,194.00 | 1,194.00 |
| 10/19/07 | 10/22/07 | 4518408 | 4601482 | HJ9020/HJ9006 | Inv | 1,978.37 | 1,978.37 |
| 10/19/07 | 10/22/07 | 4518409 | 4626881 | HM6841 | Inv | 1,783.56 | 1,783.56 |
| 10/22/07 | 10/23/07 | 4523547 | 4628537 | HM9774 | Inv | 1,194.00 | 1,194.00 |
| 10/22/07 | 10/23/07 | 4523548 | 4629009 | HN1679 | Inv | 2,195.20 | 2,195.20 |
| 10/23/07 | 10/24/07 | 4527087 | 4628478 | HM8512 | Inv | 1,561.80 | 1,561.80 |
| 10/23/07 | 10/24/07 | 4527088 | 4628546 | HM9765 | Inv | 1,194.00 | 1,194.00 |

**More...**

**F3=Exit F4=Comments F9=Print Listing F10=Payments F11=View F12=Cancel F20=Dial**

STEVES1 AR300 C. R. ENGLAND, INC. OPEN INVOICES 2/18/09
STEVES **CUSTOMER ACCOUNT INQUIRY** 14:32:18

Customer **DLMFL DEL MONTE FRESH PRODUCE** **6** SI **0** DP **0** PM **1** IM
Address **PO BOX 149222, ATTN: DENISE MARSHALL, CORAL GABLES, FL 33114-9222**
Contact **DENISE MARSHALL** Telephone **305 520-8372**
Last Payment: Date - **2/11/08** Check No. - **ACH7** Amount - **46,500.10**

| Current | 31-60 Days | 61-90 Days | Over 90 Days | Total Balance |
|---|---|---|---|---|
| **.00** | **.00** | **.00** | **37,564.52** | **37,564.52** |

Position to: Invoice No. ________ Order No. ________ Inv Date 0/00/00

| Inv Date | Mailed | Inv No. | Ord No. | Reference | Type | Amount | Balance |
|---|---|---|---|---|---|---|---|
| 10/23/07 | 10/24/07 | 4527089 | 4632998 | HN4670 | Inv | 782.34 | 782.34 |
| 10/29/07 | 10/30/07 | 4535053 | 4630678 | HN3195 | Inv | 1,783.56 | 1,783.56 |
| 10/30/07 | | 4537809 | 4628541 | HM9785 | Inv | 1,194.00 | 1,194.00 |
| 11/08/07 | 11/09/07 | 4553717 | 4629003 | HN1120 | Inv | 2,740.99 | 2,740.99 |

**Bottom**

**F3=Exit F4=Comments F9=Print Listing F10=Payments F11=View F12=Cancel F20=Dial**

STEVES1 AR300 C. R. ENGLAND, INC. OPEN INVOICES 2/18/09
STEVES **CUSTOMER ACCOUNT INQUIRY** 14:32:28

Customer **DMWP DEL MONTE FRESH PRODUCE** **7** SI **0** DP **0** PM **1** IM
Address **PO BOX 149222, CORAL GABLES, FL 33114-9222**
Contact **MITCH CUTCHEN** Telephone **602 567-5737**
Last Payment: Date - **2/11/08** Check No. - **ACH7** Amount - **46,500.10**

| Current | 31-60 Days | 61-90 Days | Over 90 Days | Total Balance |
|---|---|---|---|---|
| **.00** | **.00** | **.00** | **23,062.35** | **23,062.35** |

Position to: Invoice No. ________ Order No. ________ Inv Date 0/00/00

| Inv Date | Mailed | Inv No. | Ord No. | Reference | Type | Amount | Balance |
|---|---|---|---|---|---|---|---|
| 10/11/07 | 10/12/07 | 4508920 | 4611683 | 40918 | Inv | 1,165.00 | 1,165.00 |
| 10/12/07 | 10/15/07 | 4510231 | 4611686 | 40920 | Inv | 1,205.00 | 1,205.00 |
| 10/16/07 | 10/17/07 | 4513379 | 4624493 | 40983 | Inv | 1,165.00 | 1,165.00 |
| 10/16/07 | 10/17/07 | 4513380 | 4624494 | 40984 | Inv | 1,165.00 | 1,165.00 |
| 10/16/07 | 10/17/07 | 4513381 | 4613321 | 40916 | Inv | 1,025.00 | 1,025.00 |
| 10/17/07 | 10/18/07 | 4515164 | 4624496 | 40985 | Inv | 1,165.00 | 1,165.00 |
| 10/17/07 | 10/18/07 | 4515165 | 4625007 | 40979 | Inv | 1,025.00 | 1,025.00 |
| 10/17/07 | 10/18/07 | 4515166 | 4611685 | 40919 | Inv | 1,165.00 | 1,165.00 |
| 10/17/07 | 10/18/07 | 4515167 | 4611690 | 40921 | Inv | 1,165.00 | 1,165.00 |
| 10/19/07 | 10/22/07 | 4518437 | 4598629 | 965941 | Inv | 1,165.00 | 1,165.00 |
| 10/23/07 | 10/24/07 | 4527114 | 4624504 | 40987 | Inv | 1,165.00 | 1,165.00 |

**More...**

**F3=Exit F4=Comments F9=Print Listing F10=Payments F11=View F12=Cancel F20=Dial**

STEVES1 AR300 C. R. ENGLAND, INC. OPEN INVOICES 2/18/09
STEVES **CUSTOMER ACCOUNT INQUIRY** 14:32:32

Customer **DMWP DEL MONTE FRESH PRODUCE** **7** SI **0** DP **0** PM **1** IM
Address **PO BOX 149222, CORAL GABLES, FL 33114-9222**
Contact **MITCH CUTCHEN** Telephone **602 567-5737**
Last Payment: Date - **2/11/08** Check No. - **ACH7** Amount - **46,500.10**

| Current | 31-60 Days | 61-90 Days | Over 90 Days | Total Balance |
|---|---|---|---|---|
| .00 | .00 | .00 | 23,062.35 | 23,062.35 |

Position to: Invoice No. ________ Order No. ________ Inv Date 0/00/00

| Inv Date | Mailed | Inv No. | Ord No. | Reference | Type | Amount | Balance |
|---|---|---|---|---|---|---|---|
| 10/23/07 | 10/24/07 | 4527115 | 4625011 | 40982 | Inv | 1,025.00 | 1,025.00 |
| 10/23/07 | 10/24/07 | 4527116 | 4636072 | 41053 | Inv | 1,165.00 | 1,165.00 |
| 10/23/07 | 10/24/07 | 4527117 | 4636186 | 41054 | Inv | 1,165.00 | 1,165.00 |
| 10/23/07 | 10/24/07 | 4527118 | 4636190 | 41055 | Inv | 1,165.00 | 1,165.00 |
| 10/25/07 | 10/26/07 | 4531008 | 4636193 | 41056 | Inv | 1,165.00 | 1,165.00 |
| 10/29/07 | 10/30/07 | 4535071 | 4636150 | 41068 | Inv | 1,207.35 | 1,207.35 |
| 10/29/07 | 10/30/07 | 4535072 | 4636160 | 41071 | Inv | 1,025.00 | 1,025.00 |
| 10/29/07 | 10/30/07 | 4535073 | 4636194 | 41057 | Inv | 1,165.00 | 1,165.00 |
| 11/08/07 | 11/09/07 | 4553738 | 4624501 | 40986 | Inv | 1,405.00 | 1,405.00 |

**Bottom**

**F3=Exit F4=Comments F9=Print Listing F10=Payments F11=View F12=Cancel F20=Dial**

STEVES2 AR300 C. R. ENGLAND, INC. OPEN INVOICES 2/18/09
STEVES **CUSTOMER ACCOUNT INQUIRY** 14:31:25

Customer **DELM DEL-MONTE FRESH PRODUCE** **14** SI **3432** DP **0** PM **1** IM
Address **PO BOX 149222, CORAL GABLES, FL 33114-9222**
Contact **EMILY TROCHE** Telephone **305 520-8475**
Last Payment: Date - **2/11/08** Check No. - **ACH7** Amount - **46,500.10**

| Current | 31-60 Days | 61-90 Days | Over 90 Days | Total Balance |
|---|---|---|---|---|
| **.00** | **.00** | **.00** | **96,074.65** | **96,074.65** |

Position to: Invoice No. ________ Order No. ________ Inv Date 0/00/00

| Inv Date | Mailed | Inv No. | Ord No. | Reference | Type | Amount | Balance |
|---|---|---|---|---|---|---|---|
| 10/10/07 | 10/11/07 | 4506646 | 4602541 | 73913 | Inv | 3,054.00 | 3,054.00 |
| 10/10/07 | 10/11/07 | 4506647 | 4602578 | 73908 | Inv | 3,830.00 | 3,830.00 |
| 10/10/07 | 10/11/07 | 4506649 | 4613912 | 74008 | Inv | 3,784.83 | 3,784.83 |
| 10/11/07 | 10/12/07 | 4508888 | 4611479 | 74006 | Inv | 4,486.07 | 4,486.07 |
| 10/18/07 | 10/19/07 | 4516925 | 4616881 | 74013 | Inv | 2,975.50 | 2,975.50 |
| 10/18/07 | 10/19/07 | 4516926 | 4621753 | 74104 | Inv | 3,010.98 | 3,010.98 |
| 10/18/07 | 10/19/07 | 4516928 | 4615549 | 74011 | Inv | 3,848.90 | 3,848.90 |
| 10/18/07 | 10/19/07 | 4516929 | 4626231 | 74111 | Inv | 2,975.50 | 2,975.50 |
| 10/18/07 | 10/19/07 | 4516930 | 4627218 | 74117 | Inv | 3,784.83 | 3,784.83 |
| 10/19/07 | 10/22/07 | 4518391 | 4591829 | 73810 | Inv | 2,948.50 | 2,948.50 |
| 10/19/07 | 10/22/07 | 4518392 | 4591834 | 73811 | Inv | 3,811.10 | 3,811.10 |

**More...**

**F3=Exit F4=Comments F9=Print Listing F10=Payments F11=View F12=Cancel F20=Dial**

STEVES2 AR300 C. R. ENGLAND, INC. OPEN INVOICES 2/18/09
STEVES **CUSTOMER ACCOUNT INQUIRY** 14:32:39

Customer **DELM DEL-MONTE FRESH PRODUCE** **14** SI **3432** DP **0** PM **1** IM
Address **PO BOX 149222, CORAL GABLES, FL 33114-9222**
Contact **EMILY TROCHE** Telephone **305 520-8475**
Last Payment: Date - **2/11/08** Check No. - **ACH7** Amount - **46,500.10**

| Current | 31-60 Days | 61-90 Days | Over 90 Days | Total Balance |
|---|---|---|---|---|
| **.00** | **.00** | **.00** | **96,074.65** | **96,074.65** |

Position to: Invoice No. ______ Order No. ______ Inv Date 0/00/00

| Inv Date | Mailed | Inv No. | Ord No. | Reference | Type | Amount | Balance |
|---|---|---|---|---|---|---|---|
| 10/19/07 | 10/22/07 | 4518393 | 4619563 | 74103 | Inv | 2,298.12 | 2,298.12 |
| 10/19/07 | 10/22/07 | 4518394 | 4614103 | 74012 | Inv | 2,298.12 | 2,298.12 |
| 10/30/07 | 10/31/07 | 4537795 | 4629718 | 74121 | Inv | 2,975.50 | 2,975.50 |
| 10/30/07 | 10/31/07 | 4537796 | 4641282 | 72417 | Inv | 2,975.50 | 2,975.50 |
| 10/30/07 | 10/31/07 | 4537798 | 4638413 | 74208 | Inv | 3,784.83 | 3,784.83 |
| 10/30/07 | 10/31/07 | 4537799 | 4639207 | 74215 | Inv | 3,368.84 | 3,368.84 |
| 10/31/07 | 11/01/07 | 4539763 | 4638393 | 74210 | Inv | 3,784.83 | 3,784.83 |
| 10/31/07 | 11/01/07 | 4539764 | 4602558 | 73910 | Inv | 3,766.00 | 3,766.00 |
| 11/01/07 | 11/02/07 | 4542076 | 4629740 | 74122 | Inv | 2,298.12 | 2,298.12 |
| 11/01/07 | 11/02/07 | 4542077 | 4631944 | 74202 | Inv | 2,248.12 | 2,248.12 |
| 11/01/07 | 11/02/07 | 4542078 | 4636452 | 74209 | Inv | 2,975.50 | 2,975.50 |

**More...**

**F3=Exit F4=Comments F9=Print Listing F10=Payments F11=View F12=Cancel F20=Dial**

STEVES2 AR300 C. R. ENGLAND, INC. OPEN INVOICES 2/18/09
STEVES **CUSTOMER ACCOUNT INQUIRY** 14:32:42

Customer **DELM DEL-MONTE FRESH PRODUCE** **14** SI **3432** DP **0** PM **1** IM
Address **PO BOX 149222, CORAL GABLES, FL 33114-9222**
Contact **EMILY TROCHE** Telephone **305 520-8475**
Last Payment: Date - **2/11/08** Check No. - **ACH7** Amount - **46,500.10**

| Current | 31-60 Days | 61-90 Days | Over 90 Days | Total Balance |
|---|---|---|---|---|
| **.00** | **.00** | **.00** | **96,074.65** | **96,074.65** |

Position to: Invoice No. ________ Order No. ________ Inv Date 0/00/00

| Inv Date | Mailed | Inv No. | Ord No. | Reference | Type | Amount | Balance |
|---|---|---|---|---|---|---|---|
| 11/01/07 | 11/02/07 | 4542079 | 4638402 | 74206 | Inv | 2,975.50 | 2,975.50 |
| 11/01/07 | 11/02/07 | 4542080 | 4638409 | 74207 | Inv | 3,784.83 | 3,784.83 |
| 11/01/07 | 11/02/07 | 4542081 | 4626245 | 74110 | Inv | 1,698.24 | 1,698.24 |
| 11/01/07 | 11/02/07 | 4542082 | 4626254 | 74113 | Inv | 3,784.83 | 3,784.83 |
| 11/01/07 | 11/02/07 | 4542083 | 4626267 | 74114 | Inv | 2,551.64 | 2,551.64 |
| 11/01/07 | 11/02/07 | 4542084 | 4627222 | 74119 | Inv | 3,848.90 | 3,848.90 |
| 11/01/07 | 11/02/07 | 4542085 | 4639193 | 74212 | Inv | 2,298.12 | 2,298.12 |
| 11/02/07 | 11/05/07 | 4543758 | 4639521 | 74211 | Inv | 3,848.90 | 3,848.90 |

**Bottom**

**F3=Exit F4=Comments F9=Print Listing F10=Payments F11=View F12=Cancel F20=Dial**

JS 44 (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

**I. (a) PLAINTIFFS**
C.R. England, Inc.

(b) County of Residence of First Listed Plaintiff Salt Lake
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
Nicklaus & Associates, P.A.
4651 Ponce De Leon Blvd., Suite 200
Coral Gables, Florida 33146
(305) 460-9888

**DEFENDANTS**
Del Monte Fresh Produce, N.A., Inc.

County of Residence of First Listed Defendant Miami-Dade
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

Attorneys (If Known)

1:09CV 22702-Jordan-McAliley

(d) Check County Where Action Arose: ☑ MIAMI-DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☑ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☑ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☒ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**
PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

PERSONAL INJURY
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
Habeas Corpus:
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt.Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus-Alien Detainee
☐ 465 Other Immigration Actions

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)
☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Re-filed- (see VI below) ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).** (See instructions second page):
a) Re-filed Case ☐ YES ☑ NO b) Related Cases ☐ YES ☑ NO
JUDGE DOCKET NUMBER

**VII. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):
28 USC 1332
Breach of contract/unjust enrichment
LENGTH OF TRIAL via 3-5 days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
**DEMAND $** 156,701.52
CHECK YES only if demanded in complaint: **JURY DEMAND:** ☑ Yes ☐ No

**ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE**
SIGNATURE OF ATTORNEY OF RECORD DATE

FOR OFFICE USE ONLY
AMOUNT 350.00 RECEIPT # 547402 IFP